No. 35,973

The State of Kansas, *Appellee,* v. Walter Ray Severns, *Appellant.*

(148 P. 2d 488)

Opinion filed May 6, 1944.

*George L. Adams,* of Wichita, argued the cause for the appellant.

*Pat Warnick,* county attorney, argued the cause, and *A. B. Mitchell,* attorney general, and *L. M. Kagey, Carl O. Bauman, Fred M. Field, Howard C. Kline* and *Virginia A. Miller,* deputy county attorneys, were on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: Walter Ray Severns was tried on an information charging him with murder in the first degree of Inez Viola Burling,

eight years of age. The jury found him guilty as charged and determined the punishment to be death. Defendant's motion for a new trial was denied and judgment rendered on the verdict. Defendant appeals, specifying that the court erred in its rulings on the introduction of evidence, in submitting the cause to the jury on the charge of murder in the first degree, and in instructing the jury.

In order that appellant's contentions be readily understood, a brief statement of the evidence is ncessary. There was evidence tending to show that Walter Ray Severns and his wife, Frances Severns, maintained a home in Wichita and that from as early as September, 1942, until the tragedy on February 8, 1943, two children of Mrs. Severns' brother lived with them. These children were Inez Viola Burling and John Elden Burling, respectively eight and six years of age, both of whom attended the public schools. On the afternoon of February 8, 1943, after the children returned from school John was whipped by the defendant because of alleged misbehavior in burning some trash. Viola seems also to have had some difficulty because she showed an older sister, who resided elsewhere but had been at the home, some of her schoolwork. Without attempting any more than an incomplete outline, and ignoring anything done to John, or anything done by defendant's wife, Frances, the evidence showed that about 8:30 in the evening, ostensibly because she "was looking mad at him" defendant compelled Viola to bend over with her hands on her ankles and he then whipped her with a wide belt. Later defendant struck Viola in the face with his fist, knocking her down and drawing blood. Thereafter defendant compelled Viola to stand on her head in a corner and while she was in such position he kicked her in the face and body. A little later he picked Viola up by the ankles and with her head hanging down, he bounced her head on the floor, which was wood with linoleum covering. This course of treatment ceased about 10:30 p. m. Viola said she was sleepy and requested permission to go to bed, but before getting there she became unconscious and fell or she fainted. A little later defendant's wife called a doctor. Without giving intervening events, it may be said an ambulance was called, and the child was taken to a hospital. The ambulance driver stated the child was dead when he picked her up to put her in the ambulance. An inspection of the body and a post-mortem examination showed many external and internal injuries and injuries to the brain. There was other evidence that Viola and her brother had been the

victims of severe punishment on previous occasions. At the police department the following morning, defendant and his wife, each in the presence of the other, made written sworn statements about what had occurred the evening before and many of the facts stated above are gleaned from those statements. In taking the statements, Mrs. Severns was first questioned. When defendant was questioned he gave substantially the same account as his wife, but charged his wife with greater participation in inflicting punishment than she had admitted. He also stated the punishment inflicted was because the child told falsehoods. The above statements were received in evidence. At the trial defendant was a witness in his own behalf and testified that at no time did he have the idea or intention of taking the life of Inez. On his direct examination he was also asked to tell what happened the evening of February 8 and his answer was "Practically the same as in the statement—just about the same."

Appellant contends the trial court erred in admitting the statement of Mrs. Frances Severns, the only reason asserted being the appellant was under restraint and did not have freedom to deny and refute the statement of his wife. The contention as here made is highly technical and does not accord with the facts. At no time during the trial was there any claim the statements were not freely made or that they were made as result of threat or duress. When Mrs. Severns was questioned she was asked if she knew the statement could be used against her and her husband in case of criminal prosecution and she answered in the affirmative. When defendant was questioned, similar questions were asked him and he answered affirmatively. He was asked about the same matters concerning which she had given statements and corroborated all she had said, and when asked if he had anything to add, he only said she had done more in inflicting punishment than she had stated. If there was any error, it was rendered harmless when on his defense he testified the statement was correct.

Appellant further contends the trial court erred in giving any instruction on murder in the first degree and in not giving an instruction on manslaughter in the first degree, and he argues these contentions together. At later places herein, we shall discuss the necessity of an instruction as to manslaughter in the first degree, as well as the form of the instruction as to murder in the first degree. On the question whether it was error to instruct on murder in the first degree, the record discloses that defendant's own statement shows

that as early as 8:30 p. m. on the day of the tragedy he commenced to punish the child by whipping her with a belt, and in successive stages lasting until 10:30 p. m. or later he hit her with his fist with force sufficient to knock her down and draw blood, compelled her to stand on her head in a corner where he kicked her in the face and body, flicked cigarette ashes in her mouth when she was on the floor, and finally took her by the ankles and bounced her head on the floor to such an' extent that soon after she was released she went into a coma and finally died. Whether this long continued course of action was mere punishment for a breach of discipline, as is vaguely hinted, or was done in the heat of passion, or was maliciously done to effect death, was a question for the jury. Under the circumstances of this case, the trial court would have committed error had it failed to give an instruction on murder in the first degree.

Appellant also complains that the giving of instruction No. 18½ was error in that the italicized sentence is a misstatement of law. That instruction reads:

"Murder at the common law is the unlawful killing of a human being with malice aforethought, express or implied. *Murder at the common law is also the unlawful killing of a human being committed in the perpetration of an attempt to perpetrate any crime or misdemeanor not amounting to a felony.*

"Manslaughter at the common law is the unlawful killing of a human being without malice, express or implied."

It does not appear the defendant objected to this instruction when given, but that was not necessary, in order to predicate error, if the instruction is clearly erroneous. (*Richardson v. Business Men's Protective Ass'n,* 129 Kan. 700, syl. ¶ 2, 284 Pac. 599.)

Rather than discuss the abstract correctness of the language criticized, we shall treat the instruction as applied to the situation presented in this case. The appellant's brief states that after he had presented a requested instruction on the relationship of *"in loco parentis,"* and had argued it, the trial court inserted the instruction complained of. The connection between the two is obscure. In oral argument the state was unable to give any particular reason why the instruction was given but in its brief it apparently argues the purpose of the instruction was to draw a distinction between murder and manslaughter. That the instruction was inserted after the instructions generally were prepared, seems to be a logical conclusion to be derived from the order and arrangement of the instructions given. Under instruction No. 5 the court defined murder in the first degree as:

"Every murder which shall be committed by any kind of willful, deliberate and premeditated killing, shall be deemed murder in the first degree."

Under instructions Nos. 12, 15, 16 and 17, the court defined murder in the second degree and manslaughter in the second, third and fourth degrees in the order named. No instruction was given as to manslaughter in the first degree.

We shall not pause to call attention to authorities and decisions dealing with what constitutes murder and manslaughter at the common law for all of those definitions are not fully in accord. But where any such definitions are not in accord with our statutory provisions the latter must control.

Our statute, G. S. 1935, 21-401, defines murder in the first degree as follows:

"Every murder which shall be committed by means of poison or by lying in wait, or by any kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or an attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree."

The definition is subject to the criticism that it uses the word "murder" to define itself, although it seems clear that the word is used as equivalent to the word "homicide." It does make it clear that any killing committed in the perpetration or any attempt to commit certain named crimes or other *felony*, is murder in the first degree. Under this section it has been held that the elements of the named crime or other felony "must be so distinct from that of the homicide as not to be an ingredient of the homicide, convictable under an information charging the homicide as murder." (*State v. Fisher*, 120 Kan. 226, syl., 243 Pac. 291.) Distinction between a killing when engaged in perpetration of a felony from a killing when engaged in perpetration of a misdemeanor, is made clear by G. S. 1935, 21-407, defining manslaughter in the first degree and reading:

"The killing of a human being without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

Where the homicide is committed in the perpetration of a misdemeanor, it is not necessary that the crime or misdemeanor not amounting to a felony should be independent of and separate from the homicide, as is clearly disclosed in *State v. Merriweather*, 136 Kan. 337, 338, 339, 15 P. 2d 425. Although in a proper case the

court may have occasion to instruct as to murder at the common law, as that phrase is used in the act defining manslaughter in the first degree, such instruction must not have the effect of saying that in and of itself the killing, when committed in the perpetration or attempt to perpetrate any crime or misdemeanor not amounting to a felony, is murder as defined in our crimes act. The statutory distinction must always be observed. We think the language in instruction No. 18½ of which complaint is made was such that the jury might well have believed that an unlawful killing committed in the perpetration or attempt to perpetrate a misdemeanor was murder, contrary to the provisions of our crimes act. It may be further observed that as the instructions contained no instruction with reference to manslaughter in the first degree, nor with respect to the latter portion of the section defining murder in the first degree, there was no occasion to dwell upon what constituted murder at the common law. The instruction as given was erroneous and prejudicial.

We now take up appellant's contention that the trial court erred in failing to instruct on manslaughter in the first degree. The state directs our attention to the fact that no such instruction was requested, and the record supports the statement. There is ample authority to sustain the proposition that where a defendant, being tried for murder, requests certain instructions, but asks none for lesser offenses, he waives failure of the court to give them. (See *State v. Post,* 139 Kan. 345, 351, 30 P. 2d 1089.) It is to be noted, however, that the statute (G. S. 1935, 62-1447) requires the trial court to charge the jury in all matters which are necessary for their information in giving their verdict, and it has been held that in prosecutions for homicide it is the duty of the trial court to instruct the jury not only as to the offense charged, but as to lesser offenses of which the accused might be found guilty under the information and upon the evidence adduced even though a request for instruction on such lesser offense was not made. (See *State v. Gloyd,* 148 Kan. 706, 84 P. 2d 966; *State v. Phelps,* 151 Kan. 199, 97 P. 2d 1105, and cases cited therein.) The fact that the court may deem the evidence supporting a lesser degree to be weak and inconclusive does not warrant it in refusing the instruction, for the weight of the evidence is for the jury. (See *State v. Cunningham,* 120 Kan. 430, 243 Pac. 1006.) Without detailing the evidence, we think it susceptible of an interpretation that the killing of the child was without design by the accused to effect her death, but resulted from

his perpetration of a crime or misdemeanor not amounting to a felony, and that the court should have given an appropriate instruction thereon.

At the trial the defendant requested the court to instruct the jury that he occupied the relationship of *"in loco parentis"* to Inez Burling and the law permitted him to administer corporal punishment to her to a reasonable extent. This request was denied. The instructions contained nothing of an equivalent nature and presented no theory of defense. Although the trial court may have thought that in view of admissions made as to the treatment given the child, such a claim was fantastic and unbelievable, still the question was for the jury. On another trial of this action an appropriate instruction or instructions presenting the accused's theory of defense, as supported by any evidence, should be given the jury.

Although no complaint is here made concerning the same, this court believes attention should be directed to instruction No. 5, which is not fully sufficient. It reads:

"Section 21-401 of the General Statutes of Kansas of 1935, is in part as follows:

" 'Every murder which shall be committed by any kind of willful, deliberate and premeditated killing, shall be deemed murder in the first degree.'

"If the Jury believe from the evidence, beyond a reasonable doubt, that the defendant in the County of Sedgwick and State of Kansas, on or about the 8th day of February, 1943, willfully, deliberately, premeditatedly and with malice aforethought beat Inez Viola Burling, and that she died from the effects of such beating, then the jury will find the defendant guilty of murder in the first degree."

On another trial such an instruction should be amended to include after the name Inez Viola Burling, the following phrase "with intent to effect her death" or its equivalent. The beating might be done with malice aforethought, as the term is correctly defined in other instructions, but it should clearly appear that the evil intent was to cause death.

It may also be observed that although no complaint was made, the evidence in this case did not require the giving of any instruction on manslaughter in the third degree as defined in G. S. 1935, 21-413.

For reasons heretofore set forth, which compel a reversal, it is not necessary that we discuss some matters urged but which are now of no consequence.

The judgment of the trial court is reversed and the cause remanded for further proceedings.