(245 P.3d 1083)
No. 102,433

STATE OF KANSAS, *Appellee*, v. SAMUEL WADE, *Appellant*.

Opinion filed December 30, 2010.

*David M. Magariel*, of The Law Offices of David M. Magariel, of Olathe, for appellant.

*Ramsey A. Olinger*, legal intern, *Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Steve Six*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and BUSER, JJ.

BUSER, J: Samuel Wade appeals his conviction of misdemeanor battery. Wade contends the trial court erred by failing to provide the jury with an instruction on the affirmative defense of parental discipline.

As discussed more fully below, we find that parental discipline is a common law defense in Kansas. We also conclude there was sufficient evidence, viewed in the light most favorable to Wade, to justify a rational jury finding in accordance with Wade's theory. Because under these circumstances the trial court had a duty to instruct the jury on the affirmative defense of parental discipline and the failure to properly instruct the jury denied Ward due process of law, we reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2008, the State charged Wade with battery, a misdemeanor offense in violation of K.S.A. 21-3412. The State alleged that Wade did "intentionally and/or recklessly cause bodily harm to another person or intentionally cause physical contact with another person . . . done in a rude, insulting or angry manner." The person referred to in the complaint was Wade's 15-year-old son, J.W.

Prior to trial, Wade's attorney filed a motion to dismiss the complaint. Although the motion is not in the record, its apparent legal basis was that Wade was lawfully disciplining J.W. at the time he struck his son. After a hearing, the trial court denied the motion. We were not provided with a transcript or journal entry regarding this hearing.

A jury trial was held on October 27, 2008. During voir dire, the prosecutor advised the jury panel, "[T]his case is about one thing. . . . The issue is not whether the defendant struck [J.W.]. . . . The issue is whether it's appropriate discipline, or whether the defendant crossed the line." The prosecutor acknowledged to the prospective jurors that "in the [S]tate of Kansas parents have an absolute right to discipline their children. Absolute, unequivocal right to discipline their children. And they can use corporal punishment to do it so long . . . as it's reasonable."

The prosecutor suggested that several factors were relevant to the jury's determination of whether striking a child was acceptable parental discipline or the crime of battery. In particular, the prosecutor highlighted the significance of the presence, location, and extent of injuries on the child and the number of physical strikes. In discussing whether corporal punishment was reasonable, the prosecutor sought the jury panel's agreement that the discipline "can't be motivated solely by your anger" and "with no instructional purpose, no causal connection, motivated solely by anger, that's over the line."

At the beginning of Wade's voir dire, defense counsel ratified the prosecutor's explanation of the relevant law, observing:

> "Well, [the prosecutor] did a pretty good job of going through all the legalities and the [moral] issue of what we are here for today.
>
> . . . .
>
> " . . . And as [the prosecutor] says, it is not illegal to discipline your child. There is a line. And the State has said that a . . . jury, should not impose your own personal beliefs on discipline or your own [morals] on a defendant and the victim."

In opening statement, the prosecutor told the jury, "[T]his case is not about parental discipline, but rather about a father . . . who lost control." In response, defense counsel told the jury, "A lot of the facts are not going to be in dispute," and "[y]ou will hear the same stories from both sides." After summarizing the evidence, defense counsel concluded, "So that's the story you will hear and then you will be asked to decide which story has more credibility and then whether the defendant, under the circumstances, used a measured response to the conduct being exhibited by his son."

The State's evidence showed that on the evening of November 24, 2007, J.W. was spending the weekend with Wade, who is divorced from J.W.'s mother. Wade lived with his parents, Phil and Linda Wade. Also residing in the house was Phil and Linda Wade's 9-year-old adopted son, Jake.

During the evening, J.W. struck Jake on the leg. J.W. testified he then went into the living room and announced, "I hit [Jake] and he [is] crying." According to J.W., Phil Wade then choked him and yelled at him. J.W. said he went upstairs cursing and yelling, " 'Who's taking me home?' "

J.W. testified that Wade came upstairs and told him, " 'If you're going to talk like a man then I'm gonna treat you like one.' " Wade then struck J.W., but the manner and number of strikes were disputed. J.W. testified that Wade hit him more than once in the head causing him to fall back onto a bed. According to J.W., he covered his face with his hands, but Wade kept hitting him with a "[m]ixture of" open hand and closed fist.

J.W. testified that he resumed his cursing and yelling after Wade returned downstairs. Wade then came back upstairs and brought J.W. downstairs to apologize to his grandparents. According to J.W., Wade dragged him downstairs by his hair. J.W. testified that he demanded to know why he should apologize, whereupon Wade hit him again. J.W. apologized to his grandmother but not to his grandfather. According to J.W., Wade then hit him in the face and knocked him unconscious.

The Olathe Police Department was contacted after J.W. returned to his mother's house. As part of the police investigation, Wade agreed to an interview by Detective Don Sundberg. The interview was video recorded, and a redacted version was shown to the jury.

During the interview Wade admitted he had struck J.W. in the face, although he maintained he did so with an open hand. Wade denied that J.W. was ever knocked unconscious. According to Wade, J.W. had simply laid down on the floor.

Although Wade acknowledged he was upset during the incident, he denied that he lost control. Wade said he could think of no other way to handle the situation. He emphasized that J.W. had a pattern of abusing Jake, that J.W. was "too big for time out," and that "quite frankly, spanking a 15 year old on the butt just doesn't work."

At the end of the interview Detective Sundberg told Wade, "It's not illegal to discipline your children, we definitely get concerned when you start hitting about the head and face, slapping, any of that, yet even a slap can cause serious injuries. . . . And anything that leaves marks or bruises or stuff has the potential to cause injury."

Lee Parks, J.W.'s mother, also testified as a State's witness. Parks testified that Wade telephoned her after the incident and said "he lost it and he slapped [J.W.]." The jury viewed photographs that Parks took of J.W. a few days after the incident. The photographs showed a number of abrasions and bruises on J.W.'s cheeks, eyelids, and forehead, on both sides of his face. Parks also identified a "tender spot" and "knot" on J.W.'s head as shown in the photographs.

Wade and his parents testified in Wade's defense. The essence of their testimony was that although Wade slapped J.W., he did not drag him downstairs by his hair or render him unconscious. They testified J.W. had laid down on the floor for a few seconds, looked up, and then asked what happened.

Wade testified that J.W.'s behavioral problems began when Wade's parents adopted Jake. Wade claimed J.W. was "getting very violent" in the months prior to the incident and that "90 percent of the time Jake got hurt when [J.W.] was there." Wade also described the other methods he had used to discipline J.W., which included grounding and depriving him of phone or computer privileges.

With regard to the incident, Wade testified that while upstairs he struck J.W. "three or four times" with his left hand and that since he is right handed, "I don't have a ton of power in my left hand." After the first strike, Wade said he was actually hitting J.W.'s hands and that his own hand remained open. Wade said that when he brought J.W. downstairs to apologize and J.W. "started getting lippy," Wade "skipped one off his head," meaning a glancing slap at J.W.'s head. It was after this slap that J.W. "laid down on the floor." Regarding his conversation with Parks, Wade testified he actually told her, "Well, it happened . . . [m]e and [J.W.] got into it and he lost it."

Under cross-examination Wade was asked, "[W]ouldn't it make more sense to have just called his mom and let him go home?" Wade responded, "Yeah, that teaches a real good example to kids." Wade maintained that his actions of striking J.W. were parental discipline.

In rebuttal, the State presented Jana Lee Duitsmann, the mother of two of Wade's other children, as a witness. Duitsmann testified that Wade called her after the incident and said he "may possibly have knocked [J.W.] out." Duitsmann also said Wade told her his mother was screaming at him to stop—a claim which Linda Wade denied on surrebuttal.

At the close of evidence, defense counsel moved for a directed verdict of acquittal. The trial judge overruled the motion, stating, "We had a motion to dismiss earlier in the case. I ruled on that . . . [a]nd the Court will rely on those cases and comments that I made at that time."

During the jury instructions conference, Wade's counsel proposed two instructions. The first provided:

"The defendant claims as a defense that his actions were taken pursuant to an act of parent-child discipline. Evidence in support of this claim should be considered by you in determining whether the State has met its burden in proving that the defendant is guilty. The State's burden of proof does not shift to the defendant. If the defense asserted causes you to have a reasonable doubt as to the defendant's guilt, you should find the defendant not guilty."

Wade's counsel informed the trial court he fashioned this particular instruction with PIK Crim. 3d 52.08 as "a frame of reference."

Defense counsel's second proposed instruction provided: "A parent has a duty to discipline a disobedient or delinquent child. If you believe that . . . Wade intended to engage in parental discipline, regardless of your own support of his actions, you should find . . . Wade not guilty."

The trial court determined it would "follow the ruling in the motion to dismiss," and that "[u]nless the parties want to agree on some instruction as to an affirmative defense, the Court's not going to allow it." The prosecutor refused to agree stating, "[I]t's no secret here that that's the defense. We haven't made any arguments to prevent them from having that as their defense." As a result, the trial court declined to give the jury Wade's two proposed instructions or any other instruction on the affirmative defense of parental discipline.

The prosecutor began his closing argument, "Folks, as I told you in opening statement and as I discussed with you in voir dire, this

case is quite simply about the defendant going too far in dealing with his son. It's about him losing his control. It's all about anger. It has nothing to do with discipline." The prosecutor argued the battery count in the alternative, asserting the jury "need to look no further" than the photographs to establish bodily harm, "[o]r, if you don't find that you could find the defendant intentionally caused physical contact . . . in a rude, insulting or angry manner." In concluding the first part of his closing argument, the prosecutor repeated that a parent has a right to discipline a child "as [long] as it's reasonable." But he maintained Wade's actions were "over the line. It's about anger. It's not about discipline."

Defense counsel began his closing argument by stating, "As you've heard this morning when we were [impaneling] the jury, as you heard the detective explain to the defendant, you've heard a few [times] today, parental discipline is not illegal. A parent has a right to physically discipline his child if . . . he or she feels it's necessary." Defense counsel acknowledged that "[t]here is a line," and he asked, "What is that line?"

Defense counsel then answered his own rhetorical question, "Well, Kansas case law has examined this issue and [it] said the line is if they have substantial injuries. Mere cuts, bruises, welts—." The prosecutor interrupted, objecting to the comment as "outside the scope of arguments with these instructions." The trial court, observing, "This has been a lot about parental discipline," said it would "allow some comments on this" but the judge also reminded the jury "to look at instruction number four." Instruction 4 provided: "Statements, arguments and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by the evidence, they should be disregarded."

Defense counsel continued:

"The Kansas Courts have looked at this and said that minor cuts, bruises, welts, do not rise to the level where the State should intervene between the parent/child relationship, that that relationship and the discipline of the parent should be determined by the parent and that the fact finder should not impose their own [morals], their own beliefs upon the parties."

Defense counsel also told the jury that a parent is probably angry, agitated, and frustrated "[a]ny time a parent physically disciplines a child," but he asserted "that does not make it illegal."

Defense counsel conceded that Wade "did strike" J.W. and "there [was] physical contact." But he repeated, "[Y]ou have to look to, as [the prosecutor] keeps saying, there's a line. So you need to look to the line. What's the line?" Defense counsel argued, "When I was maybe 14, 15 years old, I grew up in a house. My father was an attorney. . . . I got beat regularly." After the prosecutor objected, the trial court admonished defense counsel, "You're supposed to discuss the evidence and the law that applies to it." Defense counsel concluded by telling the jury that parental discipline, even if it "might shock the eye of the observer," was "up to that parent so long as they don't cross the line to determine what's appropriate to them."

The jury returned a guilty verdict. Wade was sentenced to 180 days in jail but was granted a 12-month probation. He filed a timely appeal.

## FAILURE TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF PARENTAL DISCIPLINE

Wade contends he was denied a fair trial because the jury was not instructed on the theory of his defense—that Wade struck J.W. to discipline his son. The State responds that the "instruction Wade sought is not supported by Kansas law," and "[t]here is no statutory parental discipline exception in the Kansas Criminal Code."

Our Supreme Court has set forth the standard of review for determining when a defendant is entitled to jury instructions on the theory of defense:

"A defendant is entitled to instructions on the law applicable to his or her theory of defense if there is evidence to support the theory. However, there must be evidence which, viewed in the light most favorable to the defendant, is sufficient to justify a rational factfinder finding in accordance with the defendant's theory." State v. Hendrix, 289 Kan. 859, Syl. ¶ 1, 218 P.3d 40 (2009).

The failure to give instructions on the law applicable to the theory of defense when requested may "deny the defendant a fair trial." State v. McIver, 257 Kan. 420, Syl. ¶ 1, 902 P.2d 982 (1995).

Wade is therefore claiming a due process violation. See *State v. Ninci*, 262 Kan. 21, 45, 936 P.2d 1364 (1997); *State v. Bourassa*, 28 Kan. App. 2d 161, Syl. ¶ 4, 15 P.3d 835 (1999), *rev. denied* 269 Kan. 934 (2000). Where the "gravamen" of a complaint regarding jury instructions "is a constitutional due process challenge," an appellate court exercises unlimited review. *State v. Wade*, 284 Kan. 527, 534, 161 P.3d 704 (2007).

It is uncontroverted that Wade presented evidence in support of an affirmative defense of parental discipline. Moreover, at trial, the prosecutor repeatedly acknowledged that Wade had a legal right to use force to discipline his son unless "that force crossed the line," On appeal, however, the State argues that parental discipline is not recognized as an affirmative defense in the Kansas criminal code.

In analyzing the State's argument, we note the burden of proof instruction for affirmative defenses is found in PIK Crim. 3d 52.08. The Notes on Use for PIK Crim. 3d 52.08 include a list of substantive affirmative defense instructions to be given with the burden of proof instruction. Our review of this list reveals these affirmative defenses are all statutory and the list does not include the defense of parental discipline. We agree with the State that our legislature has not statutorily established parental discipline as an affirmative defense in Kansas.

If affirmative defenses in Kansas were exclusively statutory, that would end our analysis. However, while K.S.A. 21-3102(1) "abolishes common law crimes," there is nothing in the statute "to indicate that common-law defenses or rules related thereto were abolished when the current version of the criminal code was enacted in 1969." *State v. Scobee*, 242 Kan. 421, 428, 748 P.2d 862 (1988).

Parental discipline is a common-law defense:

"Long before the advent of contemporary child abuse legislation, it was a well-recognized precept of Anglo-American jurisprudence that the parent of a minor child or one standing in *loco parentis* was justified in using a reasonable amount of force upon a child for the purpose of safeguarding or promoting the child's welfare. [Citations omitted.]" *Bowers v. State*, 283 Md. 115, 126, 389 A.2d 341 (1978).

Similar statements regarding the common law are found in *Willis v. State*, 888 N.E.2d 177, 180-81 (Ind. 2008); *State v. Lefevre*, 138 N.M. 174, 177-78, 117 P.3d 980 (2005); *State v. Wilder*, 748 A.2d 444, 449 (Me. 2000); and *Keser v. State*, 706 P.2d 263, 269-70 (Wyo. 1985); see also Johnson, *Crime or Punishment: The Parental Corporal Punishment Defense—Reasonable and Necessary, or Excused Abuse?*, 1998 U. Ill. L. Rev. 434-37 (Part 1).

Our Supreme Court tacitly recognized the defense of parental discipline in *State v. Severns*, 158 Kan. 453, 459, 148 P.2d 488 (1944). The defendant in *Severns*, after whipping, striking, and kicking his 8-year-old niece, finally picked her "up by the ankles and with her head hanging down . . . bounced her head on the floor, which was wood with linoleum covering." 158 Kan. at 454. The child soon died, and a postmortem examination "showed many external and internal injuries and injuries to the brain." 158 Kan. at 454.

At trial for the murder of the young girl, the defendant essentially admitted to his actions, which he contended was punishment inflicted because his niece was " 'looking mad at him' " and "told falsehoods." 158 Kan. at 454-55. The defendant "requested the court to instruct the jury that he occupied the relationship of *'in loco parentis'* . . . and the law permitted him to administer corporal punishment to [the niece] to a reasonable extent." 158 Kan. at 459. The trial court refused, and "the instructions . . . presented no theory of defense." 158 Kan. at 459.

Our Supreme Court inferred that the trial court "may have thought that in view of admissions made as to the treatment given the child, such a claim was fantastic and unbelievable." 158 Kan. at 459. It nevertheless stated: "[T]he question was for the jury," and upon remand for other grounds, our Supreme Court ordered "an appropriate instruction or instructions presenting the [defendant's] theory of defense, as supported by any evidence, should be given the jury." 158 Kan. at 459.

If in *Severns* there was a jury question whether the egregious pummeling of the young niece by the defendant constituted reasonable punishment, that same jury question was presented here when viewing the evidence in the light most favorable to Wade.

And if in *Severns* the trial court should have given a parental discipline instruction, the trial court was required to instruct the jury in this case as to Wade's defense. "The judge has a duty to ensure that the jury properly understands the law to be applied in a case." *State v. Mims*, 264 Kan. 506, 516, 956 P.2d 1337 (1998).

We next consider the two instructions proposed by Wade's counsel and rejected by the trial court.

First, Wade proffered a modified version of PIK Crim. 3d 52.08, Affirmative Defense—Burden of Proof. As drafted by the PIK committee, this instruction provided: "The defendant raises (describe the defense claimed) as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant." Wade sought to modify this instruction by adding a sentence to the end of the standard instruction which stated: "If the defense asserted causes you to have a reasonable doubt as to the defendant's guilt, you should find the defendant not guilty."

On appeal, Wade does not argue that the proposed modification was necessary given the particular circumstances of this case. While this modification was not significant, we see no reason to depart from PIK Crim. 3d 52.08 in this case. See *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009) (PIK instructions should be followed absent need based on particular facts of a case).

The trial court did not err in declining to give the modified instruction proposed by Wade. However, the trial court should have given PIK Crim. 3d 52.08 to inform the jury that Wade was asserting the affirmative defense of parental discipline and to instruct the jury how to consider this defense in light of the State's burden of proof.

The second instruction proffered by Wade purported to inform the jury of the substantive law on parental discipline. In this regard, we agree with the State that "[t]he instruction Wade sought is not supported by Kansas law." To instruct a jury that it should acquit the defendant so long as Wade "intended to engage in parental discipline, regardless of your own support of his actions," would base the affirmative defense entirely on the subjective intent of the

parent. Although "[s]ome older criminal cases" permitted such leeway, "this view has long since given way to the recognition of the necessity of an objective standard." Restatement (Second) of Torts, § 147, comment d, p. 267 (1964).

The trial court did not err in declining to give Wade's second proposed instruction which materially misstated Kansas law regarding the affirmative defense of parental discipline. However, the trial court should have provided the jury with an instruction setting forth a correct statement of the substantive law regarding this defense.

In Kansas, the affirmative defense of parental discipline is based on an objective standard. It is a defense to the charge of battery if a parent's use of physical force upon a child was reasonable and appropriate and with the purpose of safeguarding the child's welfare or maintaining discipline. This formulation, or a similar statement of law, should have been provided to the jury in this case.

Our formulation of the affirmative defense of parental discipline is consistent with *Severns* and *Bowers*. It is also compatible with the more recent *Keser* opinion from Wyoming where the defendant was charged with the crime of child abuse. In *Keser*, the jury was advised: "You are instructed that the use of reasonable and appropriate physical force is an affirmative defense to the crime of child abuse when it is employed by one entrusted with care of the child for the purpose of maintaining discipline." 706 P.2d at 270.

The State points out that at trial it acknowledged Wade's right to use parental discipline. Moreover, Wade repeatedly emphasized that his use of physical force was simply the latest method he had employed in an effort to modify his son's bad behavior. Even the trial court commented to the jury that the case was "a lot about parental discipline." In short, the jury undoubtedly understood that parental discipline was an issue at trial. The problem is the jury was not instructed *by the trial court* that parental discipline is a defense against battery and was not advised regarding what constitutes the defense of parental discipline in Kansas.

In its first instruction the trial judge told the jury: "It is my duty to instruct you in the law that applies to this case, and it is your duty to consider and follow all of the instructions. You should de-

cide the case by applying these instructions to the facts as you find them." Because a "jury is presumed to follow the instructions given to it," we presume the jury decided the case by applying the trial court's instructions to the facts as it found them. *State v. Reid*, 286 Kan. 494, Syl. ¶ 18, 186 P.3d 713 (2008). The instructions, however, did not inform the jury about the defense of parental discipline.

The State also contends "[t]he jury would not have returned a different verdict if some parental discipline instruction had been given." The State's contention might be true if the jury understood Kansas law from the arguments of counsel. However, a fair reading of the numerous confusing and sometimes inaccurate statements made about the law by the prosecutor and defense counsel during voir dire, opening statements, and closing arguments convinces us the jury could not have had a clear and proper understanding of the defense of parental discipline.

Most importantly, the trial court instructed the jury that *it* would inform the jury of the law, not counsel. Once again, it is the " 'jury's legal duty and proper function to accept the law as given in the instructions.' " *State v. Dayhuff*, 37 Kan. App. 2d 779, 785, 158 P.3d 330 (2007) (quoting *State v. McClanahan*, 212 Kan. 208, 214, 510 P.2d 153 [1973]). Nothing in the instructions allowed the jury to acquit Wade if the jury believed he used reasonable and appropriate physical force in disciplining J.W.

In this regard, the present case is similar to *State v. Hunter*, 241 Kan. 629, 646, 740 P.2d 559 (1987), where a defendant sought an instruction on the affirmative defense of compulsion. The trial court refused, despite evidence supporting the instruction. Our Supreme Court ruled the trial court had "effectively prevented the jury from considering the evidence presented in [the defendant's] defense. This denial of the jury's right to determine the facts constitutes reversible error." 241 Kan. at 646.

We hold the trial court had a duty to instruct the jury on the affirmative defense of parental discipline and the failure to properly instruct the jury denied the defendant due process of law.

Reversed and remanded for a new trial.