NOT DESIGNATED FOR PUBLICATION

No. 125,166

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

YADIRA ANDAZOLA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES T. GEORGE, judge pro tem. Oral argument held April 11, 2023. Opinion filed November 9, 2023. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Brenda J. Clary*, of Law Office of Brenda J. Clary, of Lawrence, for appellant.

*Jon Simpson*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., HILL and PICKERING, JJ.

HILL, J.: This is a direct appeal by Yadira Andazola of her convictions for domestic battery and criminal damage to property. She claims the judge pro tem denied her right to present her theory of defense. Andazola also claims that there is insufficient evidence to support her conviction for criminal damage to property.

*Nothing good happens at 2 a.m.*

Andazola is a single mother rearing two teenage sons. When these events took place, Miguel, the older son, was an 18-year-old high school student living at home.

One night in July 2021, Miguel worked a late shift at a fast-food restaurant and then went out with his friends. He had borrowed Andazola's car for the evening. Usually, she did not have a problem with Miguel going out after work because he would check in and tell her who he was out with and where they were going. That night, Andazola knew he had gone out after work, but Miguel, however, had been evasive and did not tell her with whom. When she called him after 11 p.m., Miguel did not answer her call. Andazola had expected Miguel to come home before midnight, but this time he did not return home until 2 a.m.

When Miguel returned home, his mother asked him to return her car key. He refused. His refusal surprised her, and they started to argue. She kept asking for the key and Miguel kept refusing. At some point, Andazola reached into Miguel's pocket to get the key but instead pulled out his phone. The two were yelling at each other—Miguel asking for the phone and his mother asking for the key. Andazola told Miguel it was her phone and if she wanted to break it, she could. She threatened to smash it if Miguel did not hand over her car key. When Miguel did not turn over the key, she threw the phone on the ground, which shattered the screen and broke the phone. Andazola testified she had become angry and frustrated.

After breaking the phone, Andazola testified, "[T]hings really got ugly." Miguel became very upset and said, "Fuck you" to his mother. She slapped him; he said, "Fuck you" two more times and "Fuck you, you fucking whore." She slapped him each time he cursed at her. Andazola testified that he had never disrespected her or cursed at her before that night. At the bench trial, responding to the question, "Were you trying to

2

teach him, or were you trying to hurt him back," she explained, "Oh, never hurt my kids, no. I was trying to teach him."

Miguel used his little brother's phone to call the police and report the incident. When the police arrived, Miguel was waiting outside their home and Andazola was distressed. The Douglas County District Attorney's Office charged her with two misdemeanors: domestic battery and criminal damage to property.

During her direct examination, Andazola was asked about her "views on corporal punishment for the discipline of a child." The State objected, citing relevance. Defense counsel responded that the question was "directly relevant to the defense of parental discipline." Counsel continued, "I realize that the young man has turned 18, but in his mother's mind he's living in her home as her child. She's still exerting a certain amount of control and discipline over him, which he expects, and from the standpoint of a mother's intent, it's relevant." The State responded that because Miguel was 18 years old, there was "no corporal punishment for an adult." The judge pro tem sustained the State's objection.

The ownership of the damaged phone is disputed. Both Miguel and Andazola testified about their individual efforts to buy the phone, each claiming ownership of the phone. Miguel testified that he gave his mother $450 cash for a phone. He explained that she went to a used phone store in Kansas City and purchased the phone for him. Before buying the phone, Andazola sent Miguel photos of available phones, and Miguel picked one from the selection. Miguel said he paid his mother $35 per month towards his portion of the phone bill.

Andazola testified that she bought the phone when Miguel started driving her older car, which could be unreliable at times. She disagreed with Miguel's testimony that he paid her $450 for the phone. Instead, Andazola said that Miguel sporadically

contributed to bills and rent. Once he gave her $200-$300 in cash, but it was not necessarily for the phone. Andazola did not expect Miguel to pay her for the phone.

The judge pro tem concluded that under Kansas law, "when you're 18 you're not a child anymore," and thus Andazola had no right to discipline her son. The judge pro tem thus found her guilty of domestic battery.

Next, the judge found that Andazola had bought the phone for Miguel. The court thought the phone "almost [came] to the point of being a gift." But even if it were not a gift, the court found that because the phone was intended for Miguel's use, he had enough of an interest in it to support a claim for criminal damage to property. The court found Andazola guilty of criminal damage to property.

The pro tem judge sentenced Andazola to concurrent 90-day jail sentences on each count and placed her on supervised probation for 6 months. The judge also ordered her to pay $200 restitution.

*Can Andazola present a parental discipline defense?*

Andazola argues that the judge pro tem denied her right to present her theory of defense. She wanted to present the parental discipline defense to the domestic battery charge. The judge pro tem ruled that because Miguel was 18, he was no longer a child, and thus the parental discipline defense was inapplicable. We treat this as a question of law. *State v. Branson*, 38 Kan. App. 2d 484, Syl. ¶ 1, 167 P.3d 370 (2007).

There are important rights at stake in resolving this question. The first is the right to make a defense. Defendants have a constitutional right to present their theory of defense, and the exclusion of evidence that is integral to that theory violates a defendant's fundamental right to a fair trial. *State v. Evans*, 275 Kan. 95, 102, 62 P.3d

4

220 (2003). If Andazola could legally raise the parental discipline defense, then by denying her the opportunity to make her defense, the judge pro tem denied her a fair trial.

The parental discipline defense arises from caselaw, thus it is a common-law defense. This does not mean it is a low quality defense. Our Supreme Court has explained that although common-law crimes were abolished under K.S.A. 21-3102(1), there is nothing in the statutes "to indicate that common-law defenses or rules relating thereto were abolished when the current version of the criminal code was enacted in 1969." *State v. Scobee*, 242 Kan. 421, 428, 748 P.2d 862 (1988). Despite its origin in caselaw, parental discipline is a recognized defense in Kansas.

Several Kansas cases have recognized the common-law defense of parental discipline. See, e.g., *State v. Severns,* 158 Kan. 453, 459, 148 P.2d 488 (1944) (tacitly recognizing the defense of parental discipline); *State v. White*, 55 Kan. App. 2d 196, 203, 410 P.3d 153 (2017); *State v. Money*, No. 124,268, 2003 WL 3143651, at *3-4 (Kan. App. 2023) (unpublished opinion); *State v. Elliott*, No. 122,178, 2020 WL 3487530, at *3 (Kan. App. 2020) (unpublished opinion); *State v. McDuffie*, No. 106,528, 2012 WL 3136492, at *3 (Kan. App. 2012) (unpublished opinion); *State v. Hunt*, No. 106,296, 2012 WL 3966535, at *3 (Kan. App. 2012) (unpublished opinion).

The most succinct explanation of the Kansas defense borrows language from a case in Maryland, *Bowers v. State,* 283 Md. 115, 126, 389 A.2d 341 (1978):

> "'Long before the advent of contemporary child abuse legislation, it was a well-recognized precept of Anglo-American jurisprudence that the parent of a minor child or one standing in *loco parentis* was justified in using a reasonable amount of force upon a child for the purpose of safeguarding or promoting the child's welfare.'" *State v. Wade*, 45 Kan. App. 2d 128, 136, 245 P.3d 1083 (2010).

In fact, there is a Pattern Instruction that can be used in prosecutions for battery or aggravated battery. In those cases, the jury is advised, "It is a defense to the charge of (battery) (aggravated battery) if a parent's use of physical force upon a child was reasonable and appropriate, and with the purpose of safeguarding the child's welfare or maintaining discipline." PIK Crim. 4th 54.311 (2019 Supp.).

We have found no Kansas case in which the court has provided the defense to a parent when their child is 18. When considering the applicability of any defense, we must also consider the facts of the case. Is the defense factually appropriate?

When this confrontation happened, Miguel, 18, was a high school student living at home and working some evenings in a fast-food restaurant. Those facts are significant when considering whether this defense applies. Certain statutes give us pause to think about its applicability.

First, K.S.A. 2022 Supp. 23-3001(b)(2) imposes on a parent a duty to pay child support and education expenses after a child reaches 18 when "the child reaches 18 years of age before completing the child's high school education." In that case, "the support shall not terminate automatically, unless otherwise ordered by the court, until June 30 of the school year during which the child became 18 years of age if the child is still attending high school." K.S.A. 2022 Supp. 23-3001(b)(2). In other words, in some cases a child support obligation does not cease automatically just because a child turns 18. In fact, a review of several statutes demonstrates that the Legislature has no rigid rule about what legally happens when you reach 18.

*When someone reaches 18, many legal freedoms and responsibilities change, but not all.*

In Kansas, a person's minority lasts until they are 18 "except that every person sixteen (16) years of age or over who is or has been married shall be considered the age

of majority in all matters relating to contracts, property rights, liabilities and the capacity to sue and be sued." K.S.A. 38-101. So, if you are 16 and are married, the benefit and burdens of the acquisition of property are opened to you.

But a person must be 21 to legally purchase and consume alcohol, gamble in a casino, place a sports wager, or purchase cigarettes or tobacco products. This is so even though the age of majority in Kansas is 18. See K.S.A. 41-727(a); K.S.A. 2022 Supp. 74-8757; K.S.A. 79-3391(b), as amended by L. 2023, ch. 18, § 5.

Even the rules about alcohol are inconsistent. For alcohol purchase or consumption, K.S.A. 41-727 sets different penalties for persons who are 18-20 and persons who are under 18. A person who is 18-20 years old that purchases or consumes alcohol in violation of the statute will face adult consequences because violation of the statute "by a person 18 or more years of age but less than 21 years of age is a class C misdemeanor for which the minimum fine is $200." K.S.A. 41-727(b). If a person less than 18 years of age violates the statute, that person is treated as a "juvenile offender under the revised Kansas juvenile justice code" and must "pay a fine of not less than $200 nor more than $500." K.S.A. 41-727(c).

We find it significant that the Legislature has recognized parental control of alcohol consumption after the child has turned 18. K.S.A. 41-727 recognizes a parent's authority for furnishing their child with beer. A person who is under the age of 21 may possess and consume a cereal malt beverage if a parent permits, supervises, and furnishes a cereal malt beverage. K.S.A. 41-727(e). We note the extension of parental control here *after* someone has turned 18. This indicates that parental control is important and does not automatically end when a child is 18.

7

We conclude that the statutes present no uniform policy that every legal right and responsibility changes when someone reaches 18. It varies with the subject being regulated.

Andazola argues that she should be able to use the parental discipline defense here because her son was living at home and still attending school. She contends she has a right to provide guidance and correction to her son while he remains in her home and he is attending school. We must explore parental rights further on this point.

We are dealing with serious interests here. The United States Supreme Court observed that parents' liberty interests in the "care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Courts should be loath to interfere with that liberty interest lightly or for no particular public purpose.

We think this is because parents' rights and duties to their children are correlative. Our Supreme Court has recognized that

> "'[a] parent's right or interest in or to the custody of an infant child is in the nature of a trust reposed in him, which imposes upon him the reciprocal obligation to maintain, care for, and protect the child, and the law secures him in this right so long as he shall discharge the correlative duties and obligations, and no longer[.]'" *In re Sharp*, 197 Kan. 502, 506, 419 P.2d 812 (1966).

These correlative rights include the right to discipline.

*We find nothing in the criminal statutes prohibiting the use of this defense.*

The criminal statutes do not prohibit the use of this defense. The domestic battery statute prohibits "knowingly causing physical contact with a . . . family or household member, when done in a rude, insulting or angry manner." K.S.A. 2021 Supp. 21-5414(a)(2). To fall under this statute, a "'family or household member'" must be 18 or older. K.S.A. 2021 Supp. 21-5414(e)(2). The battery and aggravated battery statutes contain no age requirement, meaning battery charges could be brought whether the victim is a minor or a legal adult. See K.S.A. 2022 Supp. 21-5413(a), (b).

Along this same line, we note that the abuse of a child statute does not apply if a parent uses corporal punishment after the child reaches the age of 18. K.S.A. 2022 Supp. 21-5602(a). Instead, the parent's actions could be covered by the statutes on battery—whether it is simple battery, aggravated battery, or domestic battery. See K.S.A. 2022 Supp. 21-5413(a) (battery); K.S.A. 2022 Supp. 21-5413(b) (aggravated battery); K.S.A. 2022 Supp. 21-5414(a) (domestic battery).

The judge pro tem did not believe that a parent had a right to use this defense against an 18-year-old, even if the 18-year-old is the parent's child. Making no legal analysis, the judge pro tem speculated that allowing the use of the defense could lead to an absurd result. He rhetorically asked whether a 60-year-old would have a right to hit a 30-year-old and discipline that person if they happened to be living together. But those are not the facts here. The judge pro tem did not consider that this child was 18, living at home, and attending high school. Instead, the judge pro tem concluded that under Kansas law, "when you're 18 you're not a child anymore," and then found Andazola guilty of domestic battery.

9

We are not so quick to find that this age of majority prevents the use of the common-law defense of parental discipline under the limited facts here. There is no statute that directly prohibits its use. The Legislature is silent on the subject.

Our Supreme Court discussed the issue of silence of the Legislature at length in *State v. Quested*, 302 Kan. 262, 352 P.3d 553 (2015). The issue in *Quested* was whether the lack of statutory authority authorizing district courts to impose consecutive sentences for convictions arising in separate cases prosecuted in different counties withheld such power from the courts. 302 Kan. at 262. The court cited *State v. Chronister*, 21 Kan. App. 2d 589, 903 P.2d 1345 (1995), and recognized the power of a sentencing judge to order that a sentence be served consecutive to a sentence previously imposed in a different county. 302 Kan. at 262.

The *Chronister* opinion held that instead of a direct statement by the Legislature abrogating a judge's common-law authority to impose a consecutive sentence, the judge retained the authority to decide whether a sentence should be concurrent or consecutive, especially since recognizing that authority furthered the legislative policy. *Chronister*, 21 Kan. App. 2d at 593-94. "[A] judge's common-law authority to impose consecutive sentences is not abrogated unless the legislature enacts a statute that does so or otherwise expresses a contrary intent." *Quested*, 302 Kan. at 270.

"The legislature's continued, long-term acquiescence is a strong indication that the *Chronister* court effected legislative intent when it determined the legislature meant for Kansas judges to have the discretion to impose consecutive sentences when a defendant commits crimes in multiple counties." *Quested*, 302 Kan. at 279; see *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014).

10

To hold that a judge is bound to impose a concurrent sentence where the statute is silent, the court concluded they "would necessarily have to supply words the legislature did not write." *Quested*, 302 Kan. at 284-85.

*Conclusion*

We have several concerns about what happened here. First, the right to present a defense is fundamental to a fair trial. If Andazola had a right to present that defense, then she was denied a fair trial by the judge pro tem's ruling. Second, this defense is a common-law defense and is not a product of legislation. It is thus available to defendants as needed. The Legislature, by enacting its differing rules, applies some laws to those who are 18 and other laws to people who are under 18. There has been no legislation that bars its use. We think it is erroneous to infer legislative intent from inaction or silence of the Legislature about a topic as important as this.

We hold that Andazola had the right to present her parental discipline defense under these facts. Her son was 18, living at home, and still attending high school. Denying her this defense made her trial unfair. We therefore reverse and remand for a new trial to a different judge.

Because the issue about the ownership of the damaged cell phone could be an issue in the new trial, we will move on to consider that point as well.

*Did Miguel have a sufficient interest in the damaged phone to sustain a conviction for criminal damage to property?*

Andazola argues there is insufficient evidence to support her conviction for criminal damage to property. We will review this record in a light most favorable to the State. In doing so we will not reweigh the evidence, resolve any

11

evidentiary conflicts, or pass on witness credibility. See *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Andazola and her son held different views on the ownership of the cell phone that was damaged during their confrontation. She argues that the court did not really consider her side of the story when the judge pro tem made its ruling.

To the contrary, the judge pro tem's ruling considered the conflicting evidence in the case. The judge pro tem correctly observed that the parties referred to the phone as Miguel's phone at various points in their testimony. Next, the court found that Andazola bought the phone. The court recognized that the evidence was disputed on whether Miguel paid her for the phone, but the court found that the phone "was definitely bought for his use." The judge pro tem observed that "it almost comes to the point of being a gift," but "even if it wasn't a gift, it was for his use and he had enough interest in it to support a claim for criminal damage to property." Simply put, Andazola's argument that the court failed to weigh the conflicting evidence and erroneously construed the phone as a gift is not supported by the record.

Next, Andazola argues that insufficient evidence supported findings that she acted knowingly or that Miguel had an interest in the phone. We look to what the State had to prove.

Criminal damage to property under K.S.A. 2021 Supp. 21-5813(a)(1) "is by means other than by fire or explosive . . . [k]nowingly damaging, destroying, defacing or substantially impairing the use of any property in which another has an interest without the consent of such other person." There was no dispute that the phone was damaged and inoperable. So, the question arises, did Miguel have a sufficient interest in this phone to sustain Andazola's conviction?

12

Kansas courts have recognized diverse interests that satisfy the interest element of this statute. For example, the Kansas Supreme Court recognized that a person had an interest in the door to the room they resided in after the door was damaged, even though there was no evidence that she paid rent or had a lease. *State v. Fisher*, 304 Kan. 242, 262, 373 P.3d 781 (2016), *disapproved of on other grounds by State v. Randle*, 311 Kan. 468, 462 P.3d 624 (2020). The *Fisher* court noted that "[t]he legislature could have been more specific had it wanted to limit the reach of K.S.A. 2015 Supp. 21-5813(a)(1)." 304 Kan. at 262. But, until the statute was more specific, the court would consider a residential interest covered by the statute.

The Kansas Supreme Court examined a similar issue in *State v. Bollinger*, 302 Kan. 309, 352 P.3d 1003 (2015). Though the *Bollinger* court was examining an arson statute—K.S.A. 2014 Supp. 21-5812(a)(1)(A)—the statute contained the same requirement as the criminal damage to property statute that "'another person has any interest'" in the property damaged. 302 Kan. at 313; see K.S.A. 2014 Supp. 21-5813(a)(1); see also *Fisher*, 304 Kan. at 261 (noting primary difference between arson and criminal damage to property statutes is means by which damage is accomplished). In *Bollinger*, Brent Bollinger appealed his conviction of aggravated arson of a house. Bollinger bought the house before marrying his wife, Brenna, and he was the sole owner. But the court found that Brenna had a leasehold interest in the house because Bollinger allowed her to live there. The court explained:

> "This court has held that a leasehold interest suffices to establish 'any interest' for purposes of the arson statutes. A leasehold includes a tenancy at sufferance. 'Sufferance' is '[t]oleration; passive consent.' Black's Law Dictionary 1474 (8th ed. 2004). It is undisputed that Bollinger tolerated or gave passive consent to Brenna's continued residence at the house, and this residence on her part suffices to satisfy the statutory element of her having an interest in the property. [Citations omitted.]" 302 Kan. at 315-16.

The Supreme Court found that Brenna had an interest in the house sufficient to sustain Bollinger's conviction. 302 Kan. at 317.

If Miguel was confronted at school by another student and that student pulled this phone from his pocket and thrown it to the floor, thus causing its destruction, we would not hesitate to rule that Miguel has a sufficient interest in the damaged phone so that a criminal destruction of property charge could be pursued. It matters not how he acquired an interest in the phone, be that by gift or by possession. It is important that interest is now gone because the phone is now destroyed. A once working phone is now a broken phone, and there is a loss to Miguel.

Considering the principles above, there was sufficient evidence when viewed in the light most favorable to the State that Miguel had an interest in the phone.

It is true that there was conflicting evidence on the extent of Miguel's interest in the phone. But we do not reweigh the evidence or reassess witness credibility. *Aguirre*, 313 Kan. at 209. Miguel's testimony that he paid for the phone, along with other evidence demonstrating his possession and continued use of the phone, was sufficient to establish the "property in which another has an interest" element of criminal damage to property. See K.S.A. 2021 Supp. 21-5813(a)(1).

*A belief of ownership creates no defense here.*

Andazola also asserts there was insufficient evidence to find that she acted "knowingly" as required by K.S.A. 2021 Supp. 21-5813(a)(1). She reasons that if she "considered the phone hers, she did not knowingly damage property in which Miguel had an interest." A similar argument was raised in *Bollinger*. Bollinger argued that he did not know Brenna had an interest in the house. The court rejected this argument

14

because the arson statute did "not require that a defendant have actual knowledge of someone else's interest in the property." 302 Kan. at 317.

Criminal damage to property is a general intent crime. *State v. Sterling*, 235 Kan. 526, 530, 680 P.2d 301 (1984); *In re D.A.*, 40 Kan. App. 2d 878, 892, 197 P.3d 849 (2008). The State, therefore, only needed to prove that Andazola knowingly damaged the phone. See 40 Kan. App. 2d at 892. There is no suggestion here that this was an accident or done involuntarily—she threatened to smash the phone if Miguel did not give her the car key, and then she followed through on her threat. Accordingly, sufficient evidence supports Andazola's conviction for criminal damage to property.

We reverse Andazola's conviction for domestic battery and vacate her sentences. We remand for a new trial with a different judge. We affirm her conviction for criminal damage to property.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.

* * *

PICKERING, J., dissenting:  I respectfully dissent because a parent of a child who has reached the age of majority should *not* be able to present the affirmative defense of parental discipline.

This question of whether Kansas recognizes the affirmative defense of parental discipline once the child reaches 18 years of age has not been directly addressed by Kansas appellate courts. Without controlling precedent to answer this question, we look to persuasive authorities and examine cases with the same or similar issues from other jurisdictions. See *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 45, 11

15

P.3d 1134 (2000) ("The cases from other states' courts, of course, are not controlling and, at best, may furnish a rationale this court finds persuasive.").

In considering whether the parental discipline defense is appropriate when the child is 18 years or older, at least three other states have determined that the defining line is the age of majority. These states held the parental discipline defense is not available once the child reaches the age of majority, 18 years of age. See *Anderson v. State*, 348 Ga. App. 322, 324, 822 S.E.2d 684 (2018) (defining "'child'" as "a minor"); *People v. Mulvey*, 366 Ill. App. 3d 701, 712, 853 N.E.2d 68 (2006) (finding "'child'" is a person "less than 18 years of age"); *State v. Miller*, 134 Ohio App. 3d 649, 652, 731 N.E.2d 1192 (1999) (finding person legally considered adult at age 18).

In *Mulvey*, James F. Mulvey was found guilty of two counts of domestic battery for hitting an 18-year-old family member. Mulvey appealed, claiming, among other things, the district court erred in refusing to provide a jury instruction on the reasonable discipline of a child. The Appellate Court of Illinois began its analysis by noting:  "The defense of justifiable use of force in imposing reasonable parental discipline of a child is deeply rooted in the common law of this state." 366 Ill. App. 3d at 711. As in our case, the *Mulvey* court also found that "[t]he definition of the term 'child' for purposes of the common-law defense of justifiable use of force in the reasonable parental discipline of a child is an issue of first impression . . . ." 366 Ill. App. 3d at 712. The court noted that 18 was the age of majority in Illinois. It also noted that Illinois' domestic battery statute, 720 Ill. Comp. Stat. § 5/12-3.2(c) (2002), did not include "reasonable direction of a minor child by a parent or person *in loco parentis*" in the definition of the term "'abuse.'" *Mulvey*, 366 Ill. App. 3d at 712; see 725 Ill. Comp. Stat. § 5/112A-3(b)(1) (2018). Ultimately, the *Mulvey* court held that the parental discipline defense only applied when the victim was under the age of 18. 366 Ill. App. 3d at 712.

The *Mulvey* court worried that the defendant's interpretation of the defense could lead to "unreasonable applications of the defense in situations involving parents and their adult offspring. Under such an interpretation, a 55-year-old father could lawfully utilize reasonable corporal punishment to discipline his 35-year-old daughter." 366 Ill. App. 3d at 712. The court also noted the specific facts of the case "demonstrate[d] that a parent's use of corporal punishment to correct the behavior of his or her adult children, as opposed to the utilization of an alternative form of discipline, [could] easily escalate into mutual combat." 366 Ill. App. 3d at 713. This was not something the court wanted to promote.

In *Anderson*, the Court of Appeals of Georgia reached a similar conclusion. There, Herbert Anderson Jr. was convicted of battery against his son who was 25 years old at the time of trial. The statute forming the basis for Anderson's conviction said: "In no event shall this subsection be applicable to corporal punishment administered by a parent or guardian to a child or administered by a person acting in loco parentis." Ga. Code Ann. § 16-5-23(f) (2015). Though the statute did not define "child," the *Anderson* court found that in the context of parental discipline, "the ordinary signification of 'child,' . . . is a minor." 348 Ga. App. at 324. The court saw this as not only "common sense," but also that it was "consistent with the treatment of the term in the similar context of the affirmative defense of justification. The defense of justification can be claimed '[w]hen the person's conduct is the reasonable *discipline of a minor by his parent* or a person in loco parentis[.]' (Emphasis supplied.)" 348 Ga. App. at 324.

And in *Miller*, Darwin Miller was convicted under Ohio Rev. Code Ann. § 2919.25(A) (1997) of domestic violence against his 18-year-old daughter Latasha Johnson. Johnson was a sophomore in high school and living at home. When Johnson disobeyed Miller's directive to come home after school and watch her younger brother, Miller took a belt and hit her. Miller argued parental discipline as a defense. At the time of the *Miller* decision, Ohio caselaw "contemplate[d] that a parent may discipline a

17

child," but Ohio courts had not yet "define[d] at what age one ceases to be a child." 134 Ohio App. 3d at 652.

Miller suggested that the court look at Ohio Rev. Code Ann. § 3103.03(B) (1997), which like Kansas, also requires parents to support their children beyond the age of majority as long as the child is enrolled in high school on a full-time basis. The *Miller* court did not consider this statute persuasive. The court differentiated the two statutes in terms of their purpose: Ohio Rev. Code Ann. § 3103.03 "relates only to the support obligations of parents" and "[t]his case is one involving discipline" under Ohio Rev. Code Ann. § 2919.25. *Miller*, 134 Ohio App. 3d at 652. Instead, the court relied on another statute that provides a parent could "use reasonable corporal punishment as a means to discipline a child who is under the age of eighteen and not suffering from a mental or physical handicap." 134 Ohio App. 3d at 652; see Ohio Rev. Code Ann. § 2919.22(B) (1997). The *Miller* court held that 18 was the defining age at which the parental discipline defense ceased to be legally viable. 134 Ohio App. 3d at 652.

Here, like the defendant in *Miller*, the majority also relies on a similar child support statute, K.S.A. 2022 Supp. 23-3001(b)(2), as persuasive authority. K.S.A. 2022 Supp. 23-3001(b)(2) imposes on a parent a duty to pay child support and education expenses when "the child reaches 18 years of age before completing the child's high school education" because of the differentiating purposes of child support and parental discipline.

As noted above, in considering the same question before us, the Ohio Court of Appeals rejected the defendant's argument regarding the persuasiveness of the child support statute. *Miller*, 134 Ohio App. 3d at 652. I agree with the Ohio Court of Appeals. A parent's financial duty—to continue with child support even after the child turns 18 and is attending high school—does not reasonably grant the parent the ability to exercise corporal punishment after the child turns 18. Moreover, K.S.A. 2022 Supp. 23-

18

3001(b)(2) is an exception, not the rule. *In re Marriage of Risley*, 41 Kan. App. 2d 294, Syl. ¶ 3, 201 P.3d 770 (2009) (citing earlier statute [K.S.A. 2008 Supp. 60-1610(a)] as being exception). Under the common law, the duty of support only continued until the child reached the age of majority. *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 906, 189 P.3d 1157 (2008). Therefore, I would find that K.S.A. 2022 Supp. 23-3001(b)(2) is not persuasive in extending the parent's right to exercise physical parental discipline beyond the child's age of majority.

Similar to Ohio's corporal punishment statute noted above, Kansas' abuse of a child statute, K.S.A. 2022 Supp. 21-5602, also limits parents' use of parental discipline. The statute defines child abuse in part as "knowingly inflicting cruel and inhuman corporal punishment" against a child who is under 18 years of age. K.S.A. 2022 Supp. 21-5602(a)(1)(B). The parental discipline defense is incorporated into this statute by permitting parents to use corporal punishment if it does not rise to the level of being cruel and inhuman. The parental discipline defense, however, is unavailable for child abuse charges because the defense only applies if a parent's use of physical force upon a child is reasonable and appropriate; cruel and inhuman treatment is never reasonable or appropriate. See *Bowers v. State*, 283 Md. 115, 127, 389 A.2d 341 (1978) (finding under common law, parent not allowed to impose "punishment which would exceed 'that properly required for disciplinary purposes' . . . . 'Excessive or cruel' conduct [is] universally prohibited"); *State v. Wilder*, 748 A.2d 444, 450 (Me. 2000) (noting Maine statutes recognized parent's privilege to exercise physical control over child by only prohibiting cruel treatment or "'extreme punishment'").

Notably, the abuse of a child statute does not apply if a parent uses corporal punishment after the child reaches the age of 18. K.S.A. 2022 Supp. 21-5602(a). Instead, the parent's actions could be covered by the statutes on battery—whether it is simple battery or aggravated battery—or domestic battery. See K.S.A. 2022 Supp. 21-5413(a) (battery); K.S.A. 2022 Supp. 21-5413(b) (aggravated battery); K.S.A. 2022 Supp. 21-

5414(a) (domestic battery). PIK Crim. 4th 54.311 (2019 Supp.) states that parental discipline is *only* a defense to battery or aggravated battery. Unlike domestic battery, neither battery nor aggravated battery contain an age requirement. Here, the mother was convicted under domestic battery, which includes battery against a "'family or household member'" who is 18 years of age or older. K.S.A. 2022 Supp. 21-5414(e)(2).

The differences in the child abuse and domestic violence statutes indicate that the Kansas Legislature intended to permit parents of minor children to engage in corporal punishment but to restrict parents of children who have reached the age of majority from committing battery against their children. The child abuse and domestic violence statutes thereby present a legislative intent to permit reasonable corporal punishment only on minor children.

Finally, the majority notes that a few restrictions remain until a person turns 21 years old. The 21-year age requirements mentioned by the majority—namely purchasing and consuming alcohol, gambling in a casino, wagering in sports betting, and purchasing cigarettes or tobacco products—are limited exceptions. Outside of these 21-year age requirements, the age of majority in Kansas is 18.

Irrespective of these few exceptions, a person's legal rights are substantially altered when a person reaches the age of majority. When a person turns 18, he or she is considered an adult and receives many rights associated with being the age of majority, including the right to vote and to serve on a jury. See U.S. Const. amend. XXVI, § 1 ("The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."); K.S.A. 25-2306 ("No person may vote at any election until he has reached the age of eighteen [18] years."); see 28 U.S.C. § 1865(b)(1) (requiring jurors to be 18 years of age). At age 18, a person may enlist in the armed forces. See 10 U.S.C. § 505(a) (age requirement for enlisting with armed forces). There are also consequences with turning

18: Male citizens between 18 and 26 years of age must register for the draft. 50 U.S.C. § 3802(a). Under criminal law, once a person turns 18 years of age and allegedly commits a crime, that person may be charged with a felony and/or misdemeanor; he or she is no longer considered a juvenile in the criminal justice system. See K.S.A. 38-2302(s) (defining "'[j]uvenile offender'" as "a person who commits an offense while 10 or more years of age but less than 18 years of age").

In general, the laws in Kansas respect rights granted to a person once that person reaches the age of majority. And with the age of majority comes many rights and freedoms, including the right to turn 18 years old without fear or threat of corporal punishment.

To conclude, there is persuasive authority that parental discipline is not an affirmative defense once the child reaches the age of majority. We should not extend the affirmative defense to cases involving a child who is 18 years old or older. I would thereby find the district court did not err in its ruling and affirm.